[Cite as *Schooley v. Univ. of Toledo College of Med. & Life Sciences*, 2024-Ohio-5474.]

**IN THE COURT OF CLAIMS OF OHIO**

| | |
|---|---|
| ESTATE OF SUE M. SCHOOLEY | Case No. 2024-00236JD |
| Plaintiff | Judge Lisa L. Sadler |
| v. | <u>ENTRY GRANTING DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT</u> |
| UNIVERSITY OF TOLEDO COLLEGE OF MEDICINE AND LIFE SCIENCES | |
| Defendant | |

{¶1} Pursuant to Civ.R. 56 and L.C.C.R. 4.1, Defendant moved the Court for a determination that Dr. Ajit Ramadugu, Dr. Anas Renno, Dr. Sehrish Malik, and Dr. Benjamin Hart (collectively "the UT Physicians") are entitled to civil immunity under R.C. 9.86 because they were employed by University of Toledo (UT) College of Medicine and Life Sciences and acting within the course and scope of that employment at the time they rendered medical care to Sue M. Schooley (the decedent).  In response, Plaintiff stated that it does not oppose Defendant's Motion and specifically asks the Court "to enter an Order granting Defendant's motion immediately."  Defendant did not reply.  For the reasons that follow, the Court GRANTS Defendant's Motion for Partial Summary Judgment.

**Standard of Review**

{¶2} Courts review motions for summary judgment under the standard set forth in Civ.R. 56(C), which states, in part:

> Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  No evidence or stipulation may be considered except as stated in this rule.

"[T]he moving party bears the initial responsibility of informing the trial court of the basis for the motion, and identifying those portions of the record before the trial court which demonstrate the absence of a genuine issue of fact on a material element of the nonmoving party's claim." *Dresher v. Burt*, 75 Ohio St.3d 280, 292 (1996). To meet this initial burden, the moving party must be able to point to the type of evidentiary materials listed in Civ.R. 56(C). *Id.* at 292-293.

{¶3} If the moving party meets its initial burden, the nonmoving party "may not rest upon the mere allegations or denials of the party's pleadings," but has a reciprocal burden to file a response which "must set forth specific facts showing that there is a genuine issue for trial." Civ.R. 56(E). It is well-established that courts should not render summary judgment unless,

> construing the evidence most strongly in favor of the nonmoving party:
> (1) there is no genuine issue of material fact; (2) the moving party is entitled
> to judgment as a matter of law; and (3) reasonable minds can come to but
> one conclusion, that conclusion being adverse to the nonmoving party.

*Robinette v. Orthopedics, Inc.*, 1999 Ohio App. LEXIS 2038, *7 (10th Dist. May 4, 1999). When considering whether summary judgment is appropriate, the court cannot weigh the evidence or determine the credibility of witnesses. *Grubach v. Univ. of Akron*, 2020-Ohio-3467, ¶ 40 (10th Dist.). Before awarding summary judgment, the court should take caution and resolve doubts in favor of the non-moving party. *Murphy v. City of Reynoldsburg*, 65 Ohio St.3d 356, 358-359 (1992).

**Background**

{¶4} Plaintiff filed this wrongful death action after the decedent underwent a colonoscopy procedure at ProMedica Toledo Hospital, Inc. (ProMedica), a private hospital, on or about March 11, 2022. First Am. Compl., ¶ 3. Plaintiff alleges that the colonoscopy involved, in some way, the UT Physicians, who are either "residents, fellows, or instructors" of Defendant. *Id.* at ¶ 4. As a result of the UT Physicians' alleged negligence, the decedent "suffered her untimely death" on April 13, 2022. *Id.* at ¶ 5-8.

{¶5} After the parties' attempt to file a joint stipulation regarding the UT Physicians' civil immunity failed, Defendant moved for summary judgment on the issue. *See*

August 2, 2024 Defendant's Notice of Inability to File Immunity Stipulation. In support, Defendant submitted: (1) Affidavit of Imran I. Ali, M.D., including the following exhibits referenced therein (a) UT's Annual Re-Appointment Letter of Benjamin R. Hart, M.D., (b) Dr. Malik's Graduate Medical Education Agreement, (c) Dr. Ramadugu's Graduate Medical Education Agreement, (d) Dr. Renno's Graduate Medical Education Agreement, (e) a copy of the Master Graduate Medical Education Affiliation Agreement between ProMedica and UT, and (f) a copy of the Program Letter Agreement between UT and ProMedica including exhibits and addendums referenced therein; (2) Affidavit of Ajit Ramadugu, M.D.; (3) Affidavit of Anas Renno, M.D.; (4) Affidavit of Sehrish Malik, M.D.; and (5) Affidavit of Benjamin Hart, M.D. Plaintiff neither disputes this evidence nor submitted any of its own evidence pursuant to Civ.R. 56(E).

{¶6} Initially, the Court notes that the executed agreements demonstrate that the UT Physicians were employed by Defendant during all times relevant to this case. Ramadugu Aff., ¶ 3; Renno Aff., ¶ 3; Malik Aff., ¶ 3; Hart Aff., ¶ 3. Additionally, the UT Physicians knowingly waived their right to participate in an immunity hearing and averred that they were acting within the scope of their respective employment with respect to the decedent's care and treatment. Ramadugu Aff., ¶ 2-3; Renno Aff., ¶ 2-3; Malik Aff., ¶ 2-3; Hart Aff., ¶ 2-3; *see* Ali Aff., ¶ 11.

{¶7} Regarding the UT Physicians' individual positions, Defendant admitted that "Dr. Ajit Ramadugu was a Gastroenterology Fellow, Dr. Anas Renno was a Gastroenterology Fellow, Dr. Sehrish Malik was an Internal Medicine Resident, and Dr. Benjamin Hart an attending Gastroenterologist on behalf of Defendant." Answer, ¶ 4. Specifically, Dr. Hart was employed as an Assistant Professor in the UT College of Medicine & Life Sciences Department of Medicine whose duties included performing clinical services. Ali Aff., ¶ 5, Exh. A; *see* Hart Aff., ¶ 1, 3. Separately, Doctors Ramadugu, Renno, and Malik were all employed as residents in UT's Graduate Medical Education (GME) Program. Ali Aff., ¶ 6-8, Exhs. B-D; Ramadugu Aff., ¶ 1; Renno Aff., ¶ 1; Malik Aff., ¶ 1.

{¶8} As a resident in the GME Program, Doctors Ramadugu, Renno, and Malik agreed to "[p]rovide safe, effective and compassionate patient care and present at all times a courteous and respectful attitude toward all patients, colleagues, employees, and

visitors of the Participating Sites to which the Resident is assigned" and "[p]rovide clinical services commensurate with Resident's level of training under appropriate supervision as approved by the Program in circumstances and at locations included in the Program covered by the University's professional liability insurance policies maintained on behalf of the Resident." Ali Aff., ¶ 6-8, Exhs. B-D at p. 3-4. Regarding the participating sites to which a resident in the GME Program can be assigned, Dr. Ali averred that "GME training programs of UToledo occur at various community hospital sites, including but not limited to The Toledo Hospital (d/b/a ProMedica Toledo Hospital), located in Toledo, Ohio." *Id.* at ¶ 9, Exhs. E-F.

**{¶9}** In return, UT agreed to provide, among other things, a monetary stipend, benefits, and an educational training program that met requirements of the Accreditation Council for Graduate Medical Education. *Id.* at ¶ 6-8, Exhs. B-D at p. 4-5. Importantly, though, UT had the authority to "take whatever corrective action" it deemed "reasonable and appropriate under the circumstances to remediate disciplinary problems, academic or non-academic deficiencies, including but not limited to a written reprimand, extension of or additional training, probation, reassignment, temporary or permanent suspension, termination or non-reappointment" pursuant to its GME Agreements with Doctors Ramadugu, Renno, and Malik. *Id.*, Exhs. B-D at p. 8.

**Law and Analysis**

**{¶10}** R.C. 2743.02(F) authorizes this Court to render immunity determinations concerning an officer or state employee's conduct. *See also* R.C. 9.86 (civil immunity of officers and employees); *see also Engel v. Univ. of Toledo College of Medicine*, 2011-Ohio-3375, ¶ 4. Whether an individual is entitled to civil immunity is a question of law that can be properly decided on a motion for summary judgment. *Conley v. Shearer*, 64 Ohio St.3d 284, 292 (1992). Determining the issue of immunity under R.C. 9.86

> requires a two-part analysis, the first part of which is to determine whether the person claiming immunity is a state officer or employee. If the person claiming immunity is a state officer or employee, the second part of the analysis is to determine whether that person was acting within the scope of employment when the cause of action arose.

*Engel* at ¶ 6.

{¶11} While it is a question of fact whether an individual is acting within the course and scope of his employment, "in most circumstances a person's status as a state employee is factually indisputable." *Engel* at ¶ 10; *see Garvin v. State*, 1998 Ohio App. LEXIS 2208, *7 (10th Dist. May 21, 1998). "For purposes of personal immunity under R.C. 9.86, a state employee acts within the scope of employment if the employee's actions are in furtherance of the interests of the state." (Cleaned up.) *Theobald v. Univ. of Cincinnati*, 2006-Ohio-6208, ¶ 15. Thus,

> the question of scope of employment must turn on what the practitioner's duties are as a state employee and whether the practitioner was engaged in those duties at the time of an injury. Thus, proof of the content of the practitioner's duties is crucial. The Court of Claims must have evidence of those duties before it can be determined whether the actions allegedly causing a patient's injury were "in furtherance of the interests of the state" or, in other words, within the scope of employment.

*Id.* at ¶ 23. Pursuant to R.C. 2743.02(F) and 109.36(A)(1)(b), individuals are considered to be an "[o]fficer or employee" of the state if, at the time the cause of action arises, they are "rendering medical . . . services pursuant to a personal services contract or purchased service contract with a department, agency, or institution of the state."

{¶12} Upon review, the Court finds that the UT Physicians were state employees as defined by R.C. 109.36 at the time of the decedent's procedure. Specifically, the evidence shows that Defendant and the UT Physicians entered into various contractual agreements that were applicable during all times relevant to this case. Moreover, Plaintiff does not dispute that the UT Physicians had these contractual relationships with Defendant, Defendant agreed to pay them for rendering their duties, or that their actions were in furtherance of Defendant's interests. Further, no genuine dispute of material fact exists regarding whether the UT Physicians were rendering their medical services pursuant to these contractual agreements when they treated the decedent. Therefore, Defendant is entitled to judgment as a matter of law on this issue.

{¶13} Pursuant to R.C. 2743.02(F) and 9.86, the Court finds that the UT Physicians are entitled to civil immunity arising out of the care and treatment of the decedent at issue

in this case.  Consequently, it follows that the Ohio courts of common pleas do not have jurisdiction over civil actions against the UT Physicians arising out of the same.

**Conclusion**

{**¶14**} For the reasons set forth above, the Court GRANTS Defendant's Motion for Partial Summary Judgment.  The Court holds that Dr. Ajit Ramadugu, Dr. Anas Renno, Dr. Sehrish Malik, and Dr. Benjamin Hart are entitled to civil immunity under R.C. 9.86 arising out of their care and treatment of Sue M. Schooley at issue in this case. Accordingly, the Ohio courts of common pleas do not have jurisdiction over civil actions against Dr. Ajit Ramadugu, Dr. Anas Renno, Dr. Sehrish Malik, and Dr. Benjamin Hart arising out of their care and treatment of Sue M. Schooley that forms the basis of this action.

LISA L. SADLER
Judge

**Filed October 18, 2024**
**Sent to S.C. Reporter 11/21/24**